In the Matter of VICTOR OLSEN et al., Petitioners, against STEPHEN SIMKINS et al., Constituting the Glenville Planning and Zoning Board, Schenectady County, Respondents.

In the Matter of MAE BURCH, Petitioner, against STEPHEN SIMKINS et al., Constituting the Glenville Planning and Zoning Board, Schenectady County, Respondents.

Supreme Court, Special Term, Schenectady County, July 6, 1953.

*Edward E. Weber* for petitioners.

*J. F. Heaword Robinson, Jr.,* for respondents.

GIBSON, J. These proceedings were brought, under article 78 of the Civil Practice Act, to review a determination by respondent planning and zoning board of the town of Glenville, Schenectady County, whereby these petitioners' applications for the subdivision of lots 20 and 16, as proposed and shown by map III of Woodruff Heights, were denied.

Upon the hearing of the petitions herein, counsel agreed that the proceedings be determined upon the pleadings and exhibits, without the production of testimony or other evidence.

The petitioners are the owners of lots at the intersection of the Saratoga-Schenectady highway and Lee Road, the Olsen lot, which is part of lot 20, being at the southwesterly corner and extending 60 feet on the highway and 157.3 feet on Lee Road and the Burch lot, which is part of lot 16, being at the northwesterly corner and extending 75 feet on the highway and 155.35 feet on Lee Road. Each lot is restricted, by the deed thereof, to building lines not less than 40 feet back from the highway and not less than 20 feet back from Lee Road, and each owner proposes to build in conformity with those restrictions.

The determination of the board seems to have been on the ground that each of the subdivided lots would be less in area than the 15,000 square feet said to be recommended by the State Department of Health, but then proceeded to state: '' However, if the State is willing to accept the proposed sub-division in view of existing previous construction and so indicates by approving the map, we as a commission will accept Map III of Woodruff Heights.''

Petitioners' assertion, corroborated to some extent at least by a letter from the Department of Health, that such approval has been or will be given seems not to be seriously disputed by respondents and respondents' attorney states, with commendable frankness, his belief that the denial on the ground that the area of each lot is less than 15,000 square feet may have been for the purpose of preserving the side yard setback of forty feet contended for by respondents and hereinafter discussed.

The respondents now contend, however, that the zoning ordinance of the town of Glenville in this case must be construed to prescribe building lines forty feet back from the highway and forty feet back from Lee Road as well. The pertinent portions of the ordinance appear in section 2 of article III, as follows:

"*Side Yard:* There shall be a side yard on each side of a building of not less than five (5) feet in width. All buildings and accessory buildings or (sic) corner lots shall conform to the front yard requirements on the side street, unless the Official Map shows the street to be closed.

"*Front Yard:* There shall be a front yard of not less than twenty (20) feet, except where lots comprising forty (40) per cent or more of the frontage on that side of the street between the two intersecting streets are developed with buildings having an average front yard with a variation of not more than six (6) feet in which case the average front yard line so established, shall apply to new buildings or alterations, provided that the building wall of the new building or structural alterations shall not extend beyond the line of building walls so established."

As has been indicated, the respondents assert, in paragraph " Eighth " of the defense set up in each answer, " It is the contention of respondents that these two Sections interpreted together require a forty (40) foot side yard on the Lee Road side of lots situated on the corner of Lee Road and the Saratoga Road, and particularly Lot No. 20 and Lot No. 16 for which a re-subdivision has been requested."

There being no claim that an " average front yard line " of forty feet has been established for Lee Road by the erection of buildings at that distance from the street, but it being the fact that buildings have been erected forty feet back from the Saratoga highway, it is apparently respondents' theory that, under the above-quoted provisions of the ordinance, the supposed establishment on the Saratoga highway of a " front yard line " of forty feet has the effect, as respects corner lots, of establishing a " side yard line " of forty feet on Lee Road as well. Any such construction of the ordinance seems to me so forced as to be completely untenable. In the above-quoted provision, " All buildings and accessory buildings or (sic) corner lots shall conform to the front yard requirements on the side street  *  *  *",  the words "front yard requirements on the side street " seem to me clear and unambiguous and to my mind can refer only to the setback imposed on all lots on the side street, in this case twenty feet. In the absence of any claim that " lots comprising forty per cent or more of the frontage " on the side street have been developed with buildings having an average front yard line in excess of twenty feet, the contention that a building on a corner lot must be set back forty feet on the side street while,

under the ordinance, all other buildings on that side street need be set back but twenty feet, seems not only illogical but purposeless as well.

Even if the respondents' interpretation of the ordinance were not untenable, as a matter of construction, the action of the respondent board would nevertheless have to be held invalid as arbitrary and unreasonable and constituting an abuse of discretion. This conclusion implies no criticism of the motives of the respondents who unquestionably acted conscientiously and in good faith. Although the development of which the lots in question are parts may originally have been somewhat more ambitious in scope than at present, subsequent maps and re-subdivisions have been approved which involved a number of lots comparable in area and location to those of the petitioners and upon which, so far as appears, no restrictions have been imposed comparable to those sought to be imposed against petitioners' lots.

If respondents' contentions were correct, there would then exist as against the sixty-foot frontage of the Olsen lot, side yard restrictions of forty feet plus five feet, leaving the building site fifteen feet in width. On the same basis, the building site on the Burch lot would be thirty feet wide. This situation with respect to the Olsen lot was readily foreseeable by the board at the time that sixty feet of the then remaining frontage of one hundred and twenty feet of the original lot 20 was acquired by one Crawford and a building permit thereupon issued to him. The frontage of sixty feet remaining after the Crawford purchase was that subsequently acquired by the Olsens and is, of course, the subject of their proceeding here. Although the facts last stated did not involve the Burch lot, the circumstances of location and area are such as to require the same determination here as to both lots.

The proposed subdivision of lot 20 and of lot 16 should have been approved and the determination of the respondent board must, therefore, be annulled, without costs, and such approval granted. Settle order.